IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| TED LAMONT SHUFF, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:15-cv-00020 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| G R CHEVROLET, d/b/a Autos by Nelson; | ) | By: Hon. Jackson L. Kiser |
| CAPPO MANAGEMENT XVIII, INC., | ) | Senior United States District Judge |
| d/b/a Cookeville Honda; CAPPO | ) | |
| MANAGEMENT VII, INC., d/b/a OBX | ) | |
| Chevrolet Buick; and PREMIER | ) | |
| CHEVROLET, BUICK, INC., d/b/a | ) | |
| Premier Chevrolet, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendant Cappo Management XVIII, Inc.'s, d/b/a Cookeville Honda ("Cookeville Honda") Rule 12(b)(2) Motion to Dismiss. Plaintiff and Cookeville Honda have fully briefed the matter, and I have reviewed the relevant filings and counsel's arguments. For the reasons stated herein, I will grant the Motion.

I. **STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**[1]

Plaintiff seeks relief for violations of portions of the Motor Vehicle Information and Cost Savings Act, 49 U.S.C. §§ 32701–32711; actual and constructive fraud; and breach of the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 thru -207. (Second Am. Compl. ¶¶ 62–74, Jan. 12, 2016 [ECF No. 52].) The central cause of action is a truck sale tainted by an incorrect odometer reading and owner history. Plaintiff conducted that transaction with G R Chevrolet, Inc., d/b/a Autos by Nelson ("Autos by Nelson"), a Virginia corporation with its

---

[1] At this stage, the facts are recited in the light most favorable to Plaintiff, and reasonable inferences are drawn in his favor. Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016).

principal place of business in Bassett, Virginia. (See id. ¶¶ 2, 14.) There are several more theories of relief, based on the series of preceding dealership transactions and following communications, respectively, accomplishing and concealing the central fraud.[2] Plaintiff has filed against Defendants for their respective roles. Here, the focus is on Cookeville Honda, "a Tennessee Corporation engaged, *inter alia*, in the business of selling new and used vehicles to the public on a retail basis, as well as selling vehicles wholesale." (See id. ¶ 3.) Its principal place of business is Cookeville, Tennessee. (Browning Decl. ¶ 4, Jan. 26, 2016 [ECF No. 55-1].)

In the sales timeline preceding Plaintiff's purchase, Cookeville Honda was a purchaser and seller, about five dealerships before Autos by Nelson initially acquired the truck. (See Second Am. Compl. ¶ 27(d)–(f).) Ocean Honda, a California business, sold the truck to Cookeville Honda on February 11, 2011. (Id. ¶ 27(d); see also id. ex. H [ECF No. 52-8].) Cookeville Honda had the truck for about five months, selling it to Cappo Management VII, Inc., d/b/a OBX Chevrolet Buick ("OBX Chevrolet Buick"), a North Carolina business, on July 19, 2011. (Id. ¶ 27(e)–(f); see also id. ex. I [ECF No. 52-9].) At the time of this sale, Cookeville Honda disclosed no odometer reading to OBX Chevrolet Buick.[3] (Id. ¶ 27(f); see also id. ex. I.)

---

[2] Plaintiff states a belief that Cookeville Honda and its Codefendants schemed to

> deliberately disclose odometer information on vehicles' titles . . . that were not the result of any inspection of the vehicles' odometer reading . . . simply looking at whatever had been disclosed by the prior owner . . . or looking at some document in the vehicles' files that indicated the vehicles' mileage, or just putting in a figure that was a few miles higher than the previous disclosure in order to conceal the actual mileage the vehicles had been driven.

(See Second Am. Compl. ¶ 45.) Resultant discrepancies might belie the current reading. (See id. ¶ 29.)

[3] Supplementing the California title, a Tennessee Certificate of Title Extension Form was used to reassign the truck from Cookeville Honda to OBX Chevrolet Buick (which was then called "Victory Chevrolet"). (Second Am. Compl. ex. I; see also id. ¶ 4.) That form conspicuously warned, "*FEDERAL and STATE LAW requires that you state the mileage in connection with the transfer of ownership. Failure to complete or proving* [sic] *a false statement may result in fines and/or imprisonment.*" (Id. ex. I.)

When Cookeville Honda acquired the truck, the mileage was 31,532, and that number increased as the truck "was driven one or more miles by employees, or agents or potential customers of Cookeville Honda." (Id. ¶ 27(d)–(e); see also id. ex. H.)

In February 2014, following Plaintiff's purchase, Autos by Nelson "contacted Cookeville Honda in order to get it to complete" the Tennessee Certificate of Title Extension Form. (Id. ¶ 27(u).) The odometer reading's omission had resulted in "a title that was branded 'Not Actual' mileage" (id. ¶ 20),[4] with which Plaintiff confronted Autos by Nelson (id. ¶¶ 21, 27(u)).[5] Autos by Nelson sought the completed form "so the Not Actual title brand could be 'fixed'." (Id. ¶ 27(u).) Plaintiff elaborates that Autos by Nelson, confronted with the title brand, "believed it could conspire with Cookeville Honda and OBX Chevrolet Buick, to produce a false [Tennessee Certificate of Title Extension Form], and get the . . . title 'fixed', and that [Plaintiff] would then go away." (Id. ¶ 46.) In March 2014, Cookeville Honda sent (by means not stated in the Record) Autos by Nelson a completed Tennessee Certificate of Title Extension Form, bearing the same odometer reading given when Cookeville Honda bought the truck.[6] (Id. ¶ 27(v). Compare id. ex. O [ECF No. 52-15], with id. ex. H.) OBX Chevrolet Buick received and signed the disclosure, which Autos by Nelson provided to the Virginia DMV, which issued a title without the "Not Actual" mileage brand. (See id. ¶ 27(w)–(y).)

---

[4] Autos by Nelson had "applied to the Virginia DMV to have the truck's title put in its name, and on March 26, 2012 the Virginia DMV issued [the] title . . . with an Odometer Brand of 'Not Actual' mileage." (Second Am. Compl. ¶ 27(n); see also id. ex. N [ECF No. 52-14].)

[5] Around February 25, 2014, a different dealership advised Plaintiff of the title brand. (Second Am. Compl. ¶ 20.) Plaintiff was attempting to trade in the truck after experiencing significant electrical and engine problems. (Id. ¶ 19.)

[6] Moreover, a different agent, Diana Porter, had signed the incomplete Tennessee Certificate of Title Extension Form. (Second Am. Compl. ¶ 27(f), (v); see also id. ex. I.) Sara H. Phillips filled in the completed form, even though "[s]he was not present and did not know what the truck's odometer read at the time of sale to OBX Chevrolet Buick." (Id. ¶ 27(v); see also id. ex. O.)

It seems that Plaintiff theorizes Cookeville Honda's liability as follows:

- Count I: Cookeville Honda did not include an odometer disclosure when selling the truck (see id. ¶ 62), and Cookeville Honda conspired with Autos by Nelson and OBX Chevrolet Buick "to deceive the Virginia DMV in order to remove the 'Not Actual' title brand" and "to clean up the truck's odometer history" (id. ¶ 63);

- Count II: Cookeville Honda intentionally misrepresented the truck's mileage and acted to conceal the actual mileage (see generally id. ¶¶ 65–69); and

- Count III: Cookeville Honda failed to disclose the mileage and, later, misrepresented it to conceal fraud (id. ¶ 72(a); see generally id. ¶¶ 70–74).

Otherwise,[7] Cookeville Honda has no connection to the Commonwealth of Virginia. (See Browning Decl. ¶ 5.) It has no office space, mailing address, telephone number, employees, registered agent, or real property in Virginia.[8] (Id. ¶¶ 5–6, 13.) It "does not have a Virginia business license to conduct business in the Commonwealth" (id. ¶ 7), and it "does not solicit business" or "engage in a persistent course of conduct" here (id. ¶ 8). Nor does Cookeville Honda "derive substantial revenue from goods used or consumed or services rendered in the Commonwealth" (id. ¶ 9) or "advertise its goods or services in the Commonwealth" (id. ¶ 10).

## II. STANDARD OF REVIEW

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003).

---

[7] To be sure, Cookeville Honda maintains that it "has not committed any tortious acts or omissions in the Commonwealth" (Browning Decl. ¶ 11) and "has not committed any acts or omissions outside of the Commonwealth . . . that would injure a resident of the Commonwealth" (id. ¶ 12).

[8] For that matter, it "does not and has not paid property taxes in the Commonwealth of Virginia." (Browning Decl. ¶ 14.)

> [W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge. When determining whether a plaintiff has made the requisite *prima facie* showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff.

Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016) (citations omitted). "Although the standard may be lenient, a court 'need not credit conclusory allegations or draw farfetched inferences.'" Syngenta Crop Prot., LLC v. Willowood, LLC, 139 F. Supp. 3d 722, 727 (M.D.N.C. 2015) (quoting Masselli & Lane, PC v. Miller & Schuh, PA, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (per curiam)).

## III. DISCUSSION

"'Personal jurisdiction' is the phrase used to express a court's power to bring a person into its adjudicative process." Noble Sec., Inc. v. MIZ Engage, Ltd., 611 F.Supp.2d 513, 525 (E.D. Va. 2009). Invoking "'an "affiliatio[n]" between the forum and the underlying controversy,'" Walden v. Fiore, 134 S. Ct. 1115, 1121 n.6 (2014) (alteration in original) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)), Plaintiff asserts the Court's *specific* personal jurisdiction over Cookeville Honda as follows[9]: Cookeville Honda, while in Tennessee, communicated a false odometer reading to Autos by Nelson, who was in Virginia, with Cookeville Honda knowing (or else it should have) that this misrepresentation would harm the purchaser in Virginia.

---

[9] "A court may exercise general or specific personal jurisdiction." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 188 (4th Cir. 2016). Plaintiff does not assert the former, which is "based on a forum connection unrelated to the underlying suit (*e.g.*, domicile)." See Walden, 134 S. Ct. at 1125 n.6; cf. Daimler AG v. Bauman, 134 S. Ct. 746, 755 (2014) ("[S]pecific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role." (second alteration in original) (quoting Brown, 564 U.S. at 925)).

"A lawful assertion of personal jurisdiction over a defendant requires satisfying the standards of the forum state's long-arm statute and respecting the safeguards enshrined in the Fourteenth Amendment's Due Process Clause." Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 301 (4th Cir. 2012).[10] The Supreme Court of Virginia construes the Commonwealth's long-arm statute to extend personal jurisdiction as far as the Due Process Clause allows, Peninsula Cruise, Inc. v. New River Yacht Sales, Inc., 512 S.E.2d 560, 562 (Va. 1999) (collecting cases),[11] so the "test collapses into a single inquiry when Virginia is the forum state," Tire Eng'g & Distrib., LLC, 682 F.3d at 301.

"No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As relevant here, the Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." Walden, 134 S. Ct. at 1121.

> The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a *substantial* connection with the forum State.

Id. at 1121 (emphasis added) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)). The Fourth Circuit "has synthesized the due process requirements for asserting specific personal jurisdiction in a three part test," under which a court will "'consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the

---

[10] Because Congress has not provided nationwide service of process for a claim under the Motor Vehicle Information and Cost Savings Act, cf. Fed. R. Civ. P. 4(e), Plaintiff's federal claim undergoes the same personal-jurisdiction analysis as that for the state-law claims, see Byrd v. Lloyd, No. 4:06CV00053, 2006 WL 3373177, at *2 n.2 (W.D. Va. Nov. 21, 2006); see also Walden, 134 S. Ct. at 1121.

[11] "[T]he Virginia long-arm statute has been repeatedly construed to assert jurisdiction to the extent due process permits." Chung v. NANA Dev. Corp., 783 F.2d 1124, 1127 n.2 (4th Cir. 1986); see also Douglas D. McFarland, Dictum Run Wild: How Long-Arm Statutes Extended to the Limits of Due Process, 84 B.U. L. Rev. 491, 512 & n.91 (2004) (identifying this approach's origins in Carmichael v. Snyder, 164 S.E.2d 703 (Va. 1968), and John G. Kolbe, Inc. v. Chromodern Chair Co., 180 S.E.2d 664 (Va. 1971)).

State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)). "This analysis is not mechanical; a court must weigh the totality of the facts before it." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016) (citations and internal quotation marks omitted).

The parties largely argue the test's first part. "The '"purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a substantial connection with the forum State . . . ."'" Verizon Online Servs., Inc. v. Ralsky, 203 F. Supp. 2d 601, 612–13 (E.D. Va. 2002) (omission in original) (quoting CompuServe Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996)).

> "[S]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction" over a nonresident defendant. But, "'some single or occasional acts' related to the forum may not be sufficient to establish [such] jurisdiction 'if their nature and quality and circumstances of their commission' create only an 'attenuated' affiliation with the forum.'"

People Express Airlines, Inc. v. 200 Kelsey Assocs., LLC, 922 F. Supp. 2d 536, 546 (E.D. Va. 2013) (second alteration in original) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 n.18 (1985)). "Because a sovereign's jurisdiction remains territorial, . . . the defendant's contacts with the forum state must have been so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just." Perdue Foods LLC, 814 F.3d at 191 (quoting Consulting Eng'rs Corp., 561 F.3d at 277–78).

Under these principles, the Fourth Circuit has identified "numerous nonexclusive factors" that may indicate a business's purposeful availment. See Perdue Foods LLC, 814 F.3d at 189.

> [T]hese factors include whether the defendant "maintains offices or agents in the forum state;" "owns property in the forum state;" "reached into the forum state to solicit or initiate business;" "deliberately engaged in significant or long-term business activities in the forum state;" or "made in-person contact with the resident of the forum in the forum state regarding the business relationship." [Courts] also consider "whether the parties contractually agreed that the law of the forum state would govern disputes;" "whether the performance of contractual duties was to occur within the forum;" and "the nature, quality and extent of the parties' communications about the business being transacted."

Id. (quoting Consulting Eng'rs Corp., 561 F.3d at 278).

The factors yield a resounding negative in the relation of Cookeville Honda to Virginia, although "the nature, quality and extent" of communications warrant some discussion. Cookeville Honda's contact with Virginia is its sending the Tennessee Certificate of Title Extension Form into the Commonwealth upon Autos by Nelson's request. The Record shows that Autos by Nelson asked Cookeville Honda for a correctly completed form and that Cookeville Honda simply provided it.[12] No facts support the form's delivery as part of some Virginia relationship, business or otherwise. The "simple exchange" of communications—with Cookeville Honda's being responsive[13]—does not suffice to establish such a substantial connection as would reveal Cookeville Honda's purposeful availment of the privilege of acting

---

[12] Considering the seeming happenstance (from Cookeville Honda's perspective) that the truck ended up in Virginia does not enhance the later communication into a substantial connection.

[13] "[A]lthough it may not treat such fact as dispositive, a court may accord 'special weight' to the fact that one party initiated contact with the other." People Exp. Airlines, Inc., 922 F. Supp. 2d at 548 (quoting CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 295 n.17 (4th Cir. 2009)); Worldwide Ins. Network, Inc. v. Trustway Ins. Agencies, LLC, No. 1:04CV00906, 2006 WL 288422, at *5 (M.D.N.C. Feb. 6, 2006) (collecting cases).

in Virginia. See Indep. Printers Worldwide, Inc. v. Cole, No. 3:15-CV-185-JAG, 2015 WL 4705507, at *5 & n.12 (E.D. Va. Aug. 6, 2015) (collecting cases).[14]

Plaintiff argues jurisdiction under "the so-called 'effects test,'"[15] which "does not supplant the minimum contacts analysis, but rather informs it." See Consulting Eng'rs Corp., 561 F.3d at 280. It is generally formulated to consider whether

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

Consulting Eng'rs Corp., 561 F.3d at 280 (quoting Carefirst of Md., Inc., 334 F.3d at 398). Importantly, the effects test's application requires more than a rote marshalling of facts, see Shapiro v. Sun Life Assurance Co. of Can., 117 F.R.D. 550, 555 (D.N.J. 1987), and the "proper

---

[14] Plaintiff holds out Eplus Technology, Inc. v. Aboud, 313 F.3d 166 (4th Cir. 2002), as a representative case where an out-of-state defendant's delivery of false information, with intent that the receiving Virginia businesses rely on it, established specific personal jurisdiction. There, "Aboud used a Canadian corporation [("MBT")] to swindle computer equipment suppliers through what is known as a 'bust-out scheme.'" Id. at 170; see also id. (defining "a typical bust-out scheme"). Addressing the substance of the Virginia contacts, see generally id. at 172–73, the Fourth Circuit observed that, "[i]n order to obtain credit for MBT from Virginia corporations, Aboud submitted false information to Dun & Bradstreet, and she faxed credit applications to [the plaintiff] and [another creditor] in Virginia." Id. at 177. "[S]he had provided false information to Dun & Bradstreet in connection with its Reports on MBT, intending for Virginia businesses to rely on this information." Id. This sufficed Id.

Unlike Cookeville Honda, Aboud actively pursued the furtherance of business relationships in Virginia. Cookeville Honda seems merely to have responded to a one-time request to correct an omission.

[15] The effects test was "drawn from Calder v. Jones, 465 U.S. 783 [] (1984)," ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997), "[t]he crux of" which was "that the reputation-based 'effects' of the alleged libel connected the defendants to California," Walden, 134 S. Ct. at 1123–24.

> The strength of that connection was largely a function of the nature of the libel tort. . . . [B]ecause publication to third persons is a necessary element of libel, the defendants' intentional tort actually occurred *in* California. In this way, the "effects" caused by the defendants' article— *i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California* . . . .

Walden, 134 S. Ct. at 1124 (citations omitted). "That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction." Id.

focus" remains on "'"the relationship among the defendant, the forum, and the litigation,"'" Walden, 134 S. Ct. at 1123 (quoting Calder v. Jones, 465 U.S. 783, 788 (1984)).

Plaintiff argues the effects test as follows: Cookeville Honda defrauded Plaintiff (who felt the harm in Virginia) by expressly aiming the Tennessee Certificate of Title Extension Form into the Commonwealth. Even if fraudulent and even if focused on Virginia, the sum of the tort, injury, and aiming does not *substantiate* Cookeville Honda's *connection* with Virginia. In other words, these considerations do not enhance the connection to such a level that would analogize Cookeville Honda's responsively sending the form into Virginia to its intentionally submitting to Virginia's territorial jurisdiction.

### IV.　CONCLUSION

Because Cookeville Honda's insubstantial contact with Virginia reveals no purposeful availment of the privilege of acting in Virginia, there is no occasion to address the second or third parts of the specific-personal-jurisdiction inquiry. This Court lacks personal jurisdiction over Cookeville Honda, and I will grant its Motion to Dismiss.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 1st day of August, 2016.

s/Jackson L. Kiser  
SENIOR UNITED STATES DISTRICT JUDGE